## 70668. THE STATE v. FARMER.
### (338 SE2d 489)

DEEN, Presiding Judge.

In March 1984, a GBI agent assigned to the Savannah Regional Drug Enforcement Office received information that the appellant, James Shelton Farmer, had cocaine in his residence. Acting on this, the agent prepared an affidavit in support of an application for a search warrant, in which he indicated that the informant had personally observed the cocaine in Farmer's residence and that the informant was reliable because he or she had previously supplied accurate information which resulted in three arrests for drug charges. The magistrate issued the warrant and Farmer's residence and automobile were searched. Seized were a foil packet containing cocaine, various items having cocaine residue, several butts of marijuana cigarettes, a tetracycline pill, a .22 caliber pistol with the serial number filed off,

and another .22 caliber pistol and a .357 Magnum revolver which were subsequently found to be stolen.

Farmer was indicted on two counts of violation of the Georgia Controlled Substances Act, one count of violation of the Georgia Dangerous Drug Act, two counts of theft by receiving stolen property, and one count of criminal use of an article with an altered identification mark. He pled not guilty and filed a motion to suppress the seized items, alleging that the affidavit, the issuance and return of the warrant, and the seizure violated his rights "under the Constitution of these United States and of the sovereign State of Georgia." Following a hearing, the trial court found the affidavit insufficient to support the application for a search warrant, and granted the defendant's motion. This appeal by the state followed. *Held*:

In *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), the Supreme Court discarded the strict two-pronged, *Aguilar-Spinelli* requirement of (a) demonstrating an informant's reliability and (b) providing the source of the informant's tip in an affidavit to support issuance of a search warrant, and adopted the "totality of the circumstances" test. "The task of the issuing magistrate is simply to make a practical, common-sense decision, whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. at 238-239. See also *State v. Stephens*, 252 Ga. 181 (311 SE2d 823) (1984).

In *Illinois v. Gates*, where the affidavit in support of the search warrant was technically deficient under the *Aguilar-Spinelli* test, the Supreme Court considered all of the circumstances and found that the affiant officer's corroboration of the informant's tip, by independent investigation, provided sufficient reliability and thus a substantial basis for concluding that probable cause existed. In effect, the police officer's corroboration of the informant's tip substituted for the previously required showing of an informant's reliability and basis of knowledge. *Illinois v. Gates*, however, certainly did not establish a requirement of such corroboration, and the dissenting opinion's contrary suggestion "is pregnant with innovation, but barren of law." *Minor v. State*, 63 Ga. 318, 321 (1879).

The affidavit in this case certainly was sufficient to support issuance of a search warrant under the *Aguilar-Spinelli* test. See *Pressel v. State*, 163 Ga. App. 188, 190 (292 SE2d 553) (1982). The dissenting opinion is unduly concerned about "what led the informant to his conclusion that he saw cocaine"; a fair probability that the informant recognized controlled substances when he or she saw them was suffi-

ciently demonstrated, for purposes of obtaining a search warrant, by the statement that previous tips given by the informant had resulted in three other arrests on drug charges. Because the totality of the circumstances analysis under *Illinois v. Gates* actually is a more lenient test (supposedly a practical, common-sense approach) than the *Aguilar-Spinelli* test, it logically follows that the affidavit in this case provided sufficient basis for finding probable cause. The trial court thus erred in granting the defendant's motion to suppress.

*Judgment reversed. Banke, C. J., McMurray, P. J., Birdsong, P. J., and Carley, J., concur. Sognier, J., concurs in the judgment only. Pope, Benham and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

I respectfully dissent.

The trial court granted the defendant's motion to suppress, having concluded that the agent's affidavit was deficient of itself and that there was no evidence that certain additional information, which the officer testified to at the motion hearing, had been given to the magistrate. In considering whether to issue a search warrant, the magistrate may consider both the affidavit and oral testimony under oath as to probable cause. *Maddox v. State*, 133 Ga. App. 709, 710 (213 SE2d 1) (1975).

1. At issue is whether the affidavit is insufficient as a matter of federal constitutional law to establish the probable cause necessary for issuance of the warrant.[1]

The affidavit states: "Within the past 24 hours this affiant was contacted by a confidential reliable informant who stated that within the past 72 hours he/she was in the residence of Shelton Farmer and observed a quantity of cocaine. Said informant wishes to remain anonymous and is believed to be reliable in that he/she has been known by this affiant for at least two years. Said informant has supplied information in the past to the GBI which has resulted in the

---

[1] The question in terms of state constitutional law is not at issue because defendant did not rely on that. It can hardly be said that he raised a state constitutional claim by merely intoning the state's name, particularly by wording his citation of authority as though there were one constitution for both governments. No reference is even made to that section of the constitution which might apply, although we can safely assume that 1983 Ga. Const., Art. I, Sec. I, Par. XIII would be relevant. The decision of the court below is founded on an application of federal constitutional principles. Although several state cases are cited, they construe and apply the standards demanded by the federal constitution as enunciated by the United States Supreme Court and as understood by the Supreme Court of Georgia. Thus, although the state constitution may give the same degree of protection and thus its application would lead to the same result below, it was not drawn into the debate. Thus we have no opportunity to determine whether defendant's rights contained in our own organic document were violated. See Justice Smith's reference to the distinction, in *State v. Stephens*, 252 Ga. 181, 187, n.1 (311 SE2d 823) (1984).

arrest of at least three persons on drug charges. Based on the easy destruction of cocaine it is requested that a no knock provision be made a part of this search warrant to insure that the evidence not be destroyed."

Under *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), " ' "[P]robable cause means . . . reasonable grounds, and is that apparent state of facts which seems to exist after reasonable and proper inquiry." [Cits.]' *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984)." *Mize v. State*, 173 Ga. App. 327, 328 (1) (326 SE2d 782) (1985).

Our Supreme Court has cautiously read *Illinois v. Gates*, recognizing it as "a rule of subjectivity. One judge's 'probable cause' can be another judge's 'inarticulable suspicion' . . . Prudence counsels that *Gates* be considered as the *outer limit* of probable cause. Accordingly, we urge that attesting officers and magistrates make every effort to see that supporting affidavits reflect the maximum indication of reliability . . . ." *State v. Stephens*, supra at 184. This is not to say that the *Gates* view should be questioned. The United States Supreme Court recently and firmly confirmed it: "We did not merely refine or qualify the 'two-prong test.' We rejected it as hyper-technical and divorced from 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' [Cit.]." *Massachusetts v. Upton*, 466 U. S. ___ (104 SC 2085, ___ LE2d ___) (1984).

Accepting *Gates* as the outer acceptable parameter, the affidavit in the instant case is insufficient to provide the probable cause required. The affidavit supporting the warrant gave reasons for the affiant's belief in the informant's reliability, stated summarily that the informant had obtained his knowledge by seeing cocaine at the residence, and set forth a time period to show that the information was not stale. "Staleness" as it relates to probable cause is measured by the probability that the thing to be seized is located at the place to be searched and it involves the interval between (i) the time when the thing to be seized is indicated by the evidence or information to be at the place to be searched and (ii) the time when the search warrant is issued. *Caffo v. State*, 247 Ga. 751, 755 (279 SE2d 678) (1981); *Shrader v. State*, 159 Ga. App. 522, 523, 524 (284 SE2d 37) (1981). Thus the request for a search warrant appears to have been timely. But the affidavit is gravely lacking. It in no manner establishes that the affiant took any steps to confirm the data provided by the informant, nor does it give any detail whatsoever about what the informant observed. How, why, or under what circumstances the informant made the determination that he had observed what he took to be cocaine in Farmer's residence was never articulated before the magistrate. What led the informant to his conclusion that he saw cocaine?

Was it because he witnessed someone using the substance as one might use the drug cocaine, or because he observed a drug transaction or a powder packaged as cocaine usually is, or perhaps because he knew of previous use or sale of drugs at the residence? Or was it because he saw a small amount of white powder on a dish or ashtray in the bathroom and assumed it was cocaine? The affidavit was totally bare of data which would support the informant's conclusion that what he observed was cocaine. There was little if any basis upon which the magistrate could rely for the accuracy of the report. The lack of indicia precluded a judgment by the magistrate founded on probable cause that what the informant, one step removed from the affiant, saw was cocaine. The affidavit was devoid of any articulation in this regard.

Under the "totality of the circumstances" analysis, corroboration of details of an informant's tip by independent police work is generally necessary. *Illinois v. Gates*, supra. *Stephens* speaks repeatedly of the importance of corroboration. The United States Supreme Court said in *Gates*: "Our decisions applying the totality-of-the-circumstances analysis . . . have consistently recognized the value of corrobation of details of an informant's tip by independent police work." *Illinois v. Gates*, supra, 241. For the purpose of assessing probable cause, corroboration of the hearsay information provided by the informant through other sources reduces " 'the chances of a "reckless or prevaricating tale," thus providing "a substantial basis for crediting the hearsay." ' [Cits.]" *Thomas v. State*, 173 Ga. App. 481, 482 (1) (326 SE2d 840) (1985). See also *Mize v. State*, supra; *Borders v. State*, 173 Ga. App. 110 (325 SE2d 626) (1984); *Whitten v. State*, 174 Ga. App. 867 (331 SE2d 912) (1985). Here there was absolutely no indication of independent investigative work by the police prior to issuance of the warrant. In addition, there was a complete lack of any specifics or details of the circumstances of the informant's observation which would lend accuracy to the informant's opinion, in the judgment of the magistrate. All the magistrate could conclude was that a reliable informant had provided a fairly recent new tip based on the informant's scantily-described observation. The totality of the circumstances was much too sparse, a mere framework.

We should pay great deference to a magistrate's determination of probable cause, and, "in cases where the demonstration of probable cause in a warrant is doubtful or marginal, 'the resolution . . . should be largely determined by the preference to be accorded to warrants.' [Cits.]" *Thomas v. State*, supra at 483. But this is not a marginal case of probable cause. The issuing magistrate could not determine from what was presented that there existed " 'a fair probability that contraband or evidence of a crime will be found in [the] particular place.' " *Stephens*, supra at 184, quoting *Gates*. *Stephens* rephrases it

this way, in the words of earlier Georgia cases: " '[P]robable cause means . . . reasonable grounds, and is that apparent state of facts which seems to exist after reasonable and proper inquiry.' " *Stephens*, supra at 182. The duty of the reviewing court is then " 'simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.' *Gates*, 103 SC at 2332, quoted with approval in *State v. Stephens*. . . ." *State v. Luck*, 252 Ga. 347, 348 (312 SE2d 791) (1984).

2. The analysis does not stop here. The state maintains that there is no question but that the agent acted in good faith and that the seized evidence should be allowed in its case-in-chief based upon a "good faith" exception to the exclusionary rule as recognized in *United States v. Leon*, 468 U. S. ___ (104 SC 3405, 82 LE2d 677) (1984).

Insofar as a federal claim is concerned, exclusion of evidence is unnecessary where such evidence was obtained in objectively reasonable reliance by the officer on a subsequently invalidated search warrant. In some circumstances, an officer will have no reasonable grounds for believing that a warrant was properly issued. But suppression remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the officer knew was false or would have known was false except for his reckless disregard of the truth. The same goes for cases where the issuing magistrate wholly abandoned his role of neutrality and detachment and no reasonably well-trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit so lacking the recognized indicia of probable cause as to render official belief in its existence entirely unreasonable. *United States v. Leon*, supra; see also *Massachusetts v. Sheppard*, 468 U. S. ___ (104 SC 3424, 82 LE2d 737) (1984); *United States v. Accardo*, 749 F2d 1477, 1480 (11th Cir. 1985).

With these examples in mind, once the trial court determined that the search warrant was invalid due to an insufficient showing of probable cause, the question before the trial court became whether the evidence could still be used because of objectively reasonable reliance on the warrant's authority. That is, was the reliance justified? See *Thomas v. State*, supra at 484. The issue then was the agent's objective good faith and the burden was upon the state to establish it.

I cannot here defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause. To do so would obviate the need to record the information presented to the magistrate, because the affiant could always appear at a suppression hearing and show that there was in fact probable cause but that he just neglected to present it in enough detail in the affidavit or that the magistrate just did not rec-

ord the information given in addition to what was contained in the affidavit. This would countenance lax practices before warrant-issuing magistrates. The determination of probable cause is to be made before the warrant issues. A hearing after incriminating evidence is found is not the time to establish that probable cause had existed, else the court in reviewing the issuing court will supplant it and perform its function.

This is not a mere technical error of the type referred to in *Kervin v. State*, 172 Ga. App. 478, 481 (323 SE2d 643) (1984), Deen, P. J., concurring specially. It is not a mistake solely of the magistrate's, but first of the officer who sought the warrant. He neglected to bring to the magistrate sufficiently corroborative facts to establish probable cause, yet he had prepared numerous affidavits and warrants in the past. Since this goes to the heart of his work and his responsibility, I cannot say that he could reasonably rely on the warrant that issued. Cf. *Massachusetts v. Sheppard*, supra.[2]

I am authorized to state that Judge Pope and Judge Benham join in this dissent.

DECIDED NOVEMBER 20, 1985.

Richard A. Malone, District Attorney, Donna O. Willis, Assistant District Attorney, for appellant.
John P. Claeys, for appellee.

---

[2] This case, having necessarily been decided on federal constitutional grounds, is now subject to review ultimately by the United States Supreme Court, which is the final arbiter with respect to that constitution. If the suppression had been affirmed on state constitutional grounds, maximum finality would be achieved at the Supreme Court of Georgia, thus ending the case sooner and without paving the way for the intervention of a federal court. Justice Stevens, concurring in the judgment in *Massachusetts v. Upton*, supra, discussed this backwards manner of treatment and pointed out clearly why it is wrong. In quoting from *Sterling v. Cupp*, 290 Or. 611, 614 (625 P2d 123, 126) (1981), he gave the right order: " 'The proper sequence is to analyze the state's law, including its constitutional law, before reaching a federal constitutional claim. This is required, not for the sake either of parochialism or of style, but because the state does not deny any right claimed under the federal Constitution when the claim before the court in fact is fully met by state law.' " (Upon remand, the Massachusetts Supreme Judicial Court retained the old two-prong test for purposes of state law. *Commonwealth v. Upton*, 394 Mass. 363 (476 NE2d 548) (1985)). For further discussion of method, see *State v. Jewett*, 146 Vt. ___ (500 A2d 233) (1985) (37 CrL 2409). And, while a suppression reversal on state constitutional grounds might not end the inquiry if a federal claim were also raised, it would at least contribute to the body of law giving meaning and application to our own constitution. See *State v. Kennedy*, 295 Or. 260 (666 P2d 1316) (1983).

I point this out because of the importance of properly raising and pursuing claims based on rights secured by the Constitution of Georgia, recently adopted in a revised form which reaffirms by the current populace many existing principles and incorporates new ones.

*Joseph L. Chambers, Charles T. Shean III*, amici curiae.