## A05A1125. COLON v. THE STATE.
(619 SE2d 773)

RUFFIN, Chief Judge.

A jury found Jose Fernando Colon guilty of five counts of aggravated child molestation, four counts of statutory rape, and four counts of furnishing alcohol to a minor. Colon appeals, alleging 13 enumerations of error. We find no merit to his enumerations of error, and affirm Colon's convictions.

On appeal from a criminal conviction, we view the evidence in a light most favorable to support the jury's verdict, and the defendant

---

no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court.[2] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in this light, the evidence shows that Colon, who is twenty-six years old, had an illicit sexual relationship with four minor girls, twelve and thirteen years of age. He also gave these girls alcohol to drink. Each of the girls testified as to the sexual acts Colon committed on them or on the other girls in their presence. Two condoms containing Colon's spermatozoa were recovered from a crime scene based on information from the victims.

1. In two separate enumerations of error, Colon argues the evidence was insufficient to support his convictions because the indictments contained language that specifically alleged the use of force in the commission of all the counts of the statutory rape, child molestation and furnishing alcohol to a minor, but the state failed to produce any evidence of force. These enumerations of error lack merit.

Our courts have departed from an overly technical application of the fatal variance rule, focusing instead on materiality.[4] The inquiry is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused.[5] Here, the state used a form that alleged the use of "force and arms" prior to reciting the actual allegations against Colon. We have previously found that when the phrase "with force and arms" is not a part of the statute violated, "it is surplusage, unnecessary to constitute the offense, need not be proved, and may be disregarded."[6]

The actual allegations against Colon specifically set out the offenses of statutory rape, child molestation and furnishing alcohol to a minor. Force is not a necessary element of these offenses.[7] Therefore, the state was not required to prove the use of force to sustain a conviction for these offenses. Because the phrase "force and arms" was not a part of the statutes violated, and because the indictment is couched in the words of the statute and correctly informs Colon of the

---

[1] *Shorter v. State*, 271 Ga. App. 528 (1) (610 SE2d 162) (2005).
[2] Id.
[3] Id.
[4] See *Denson v. State*, 212 Ga. App. 883, 884 (2) (443 SE2d 300) (1994).
[5] Id.
[6] *Garvey v. State*, 176 Ga. App. 268, 273 (5) (335 SE2d 640) (1985).
[7] OCGA §§ 16-6-3; 16-6-4; 3-3-23.

offenses sought to be charged, the phrase is mere surplusage and may be disregarded.[8] The variance between the indictment and the proof offered at trial did not affect Colon's substantive rights, prejudice the preparation of his defense or expose him to the possibility of subsequently having to stand trial for the same charges.[9] Consequently, the trial court did not err in refusing to grant Colon's motion for a directed verdict of acquittal on this ground.

2. Colon contends the trial court erred in admitting inadmissible victim impact evidence during the guilt/innocence phase of the trial. Specifically, Colon complains about testimony from one of the victims and her grandmother regarding the victim's hospitalization at Charter and an attempt to commit suicide after the events for which Colon was charged. We first note that while Colon's attorney posed a few objections during the course of the testimony at issue, the attorney did not object to the testimony on the ground that it was impermissible victim impact evidence. "Where an entirely different objection or basis for appeal is argued in the brief which was not presented at trial we will not consider that basis as we are limited to those grounds presented to and ruled upon by the trial court."[10]

Notwithstanding Colon's waiver of this alleged error, we have thoroughly reviewed the cited testimony and find that the evidence presented was either clearly probative as to issues at trial or was reasonably offered to rebut evidence introduced by Colon in an attempt to cast aspersions on the victim.[11] The record shows that Colon attacked the credibility and mental stability of this victim. However, the state is permitted to rehabilitate a witness whose credibility has been attacked.[12] We find no error in the trial court's admission of this testimony.

3. Colon claims the district attorney or a member of the district attorney's staff was improperly present during the grand jury's deliberations and voting. He presented the testimony of a grand jury witness to support his assertion. This witness testified that someone from the district attorney's office remained in the room while the grand jury deliberated and voted on whether to indict Colon. Colon also presented testimony from the district attorney and the assistant district attorney who prosecuted his case. These witnesses testified that they could not actually remember being in the grand jury room

---

[8] See *Garvey,* supra.

[9] See *Denson,* supra.

[10] (Punctuation omitted.) *Holmes v. State,* 271 Ga. App. 122, 123 (1), 124-125 (4) (608 SE2d 726) (2004).

[11] See *McMichen v. State,* 265 Ga. 598, 608 (17) (458 SE2d 833) (1995).

[12] See *Nance v. State,* 272 Ga. 217, 221-222 (5) (526 SE2d 560) (2000).

during deliberations, but stated that it was not unusual for a prosecutor to remain in the grand jury room to prepare the next case that was to be presented. We note that Colon does not allege that the grand jury was deceived or misled by any prosecutorial misconduct before the grand jury. In addition, there has been no showing of any prejudice from any alleged prosecutorial misconduct during the grand jury proceedings.

Colon does not cite any Georgia case law which specifically addresses the presence of a prosecutor during grand jury deliberations and voting, and we can locate no Georgia case law specifically addressing the issue. However, in a 1997 unofficial opinion rendered at the request of a State Senator, the Attorney General of Georgia, though citing no state case addressing the practice, nevertheless concludes that prosecutors or members of their staff should not be present during deliberations of a grand jury because OCGA § 15-12-67, which requires secrecy in grand jury proceedings, by implication requires that only members of the grand jury are allowed to be present during deliberations and voting.[13] We agree with the Attorney General's interpretation of the statute, but note that the indictment in this case was issued on June 5, 1995, nearly one and one-half years prior to the issuance of the unofficial opinion.

We also note that in a very strongly worded opinion, the United States District Court for the Southern District of Georgia, while acknowledging that the Court was unable to find any case law suggesting that a prosecutor violates the federal Constitution by remaining in the presence of the grand jury deliberations, condemns the practice, saying,

> it appears almost inconceivable to the Court that at the end of the Twentieth Century, and after a two hundred year history of a constitutional form of criminal justice, that one could find a prosecutor anywhere in America who thought that it was permissible to have a district attorney and/or assistant district attorney present in a grand jury room during deliberation.[14]

Indeed, the judges of the Superior Court, Ogeechee Judicial District, where this case originated, issued a "Standing Order Regarding Grand Juries" on October 23, 1996, noting that within the Ogeechee Circuit the district attorney and assistant district attorney often remained "in the presence of grand juries during deliberations and

---

[13] 1997 Un. Op. Atty. Gen. U97-3, p. 112 (1997).
[14] *McClendon v. May*, 37 FSupp.2d 1371, 1381 (III) (D) (S.D. Ga. 1999).

the finding of true bills and no bills." This order mandated that the district attorney and his assistants immediately cease the practice, stating that "[t]hey shall remain separate and apart and outside of the sight or hearing of each grand jury while that body is deliberating, voting or deciding on any other action concerning any indictment."

Lest there be any remaining question as to the propriety of the practice in Georgia courts, we hold that it is harmful as a matter of law for a district attorney or members of his staff to remain in the presence of the grand jury while the grand jury is deliberating, voting or deciding on any other action concerning any indictment, and that an indictment obtained under such circumstances must be set aside.

Independence and secrecy of deliberation have been hallmarks of the American grand jury since colonial times.[15] In our society, the grand jury functions as

> the primary security to the innocent against "hasty, mali-
> cious and oppressive persecution; it serves the invaluable
> function in our society of standing between the accuser and
> the accused, whether the latter be an individual, minority
> group, or other, to determine whether a charge is founded
> upon reason or was dictated by an intimidating power or by
> malice and personal ill will."[16]

Because of the importance of the grand jury's role, its proceedings should not be subject to outside influence, especially by a prosecutor or a judge.[17] "Prosecutors bear a particularly weighty duty not to influence the jury because the defendant has no representative to watch out for his interests before the grand jury."[18] And we find it likely that the grand jury would be influenced by having the district attorney or a member of his staff present, given that the indictment was presented by the district attorney's office.[19] As Justice Marshall wrote in dissent in *United States v. Mechanik*,[20] "[t]he prejudicial impact of the unauthorized presence of persons in the grand jury

---

[15] See *United States v. Navarro-Vargas*, 408 F3d 1184, 1190-1195 (II) (A) (9th Cir. 2005) (outlining history of grand jury).

[16] *Cochran v. State*, 256 Ga. 113, 117 (344 SE2d 402) (1986) (Smith, J., concurring) (quoting *Wood v. Georgia*, 370 U. S. 375, 390 (82 SC 1364, 8 LE2d 569) (1962)).

[17] See *United States v. Dionisio*, 410 U. S. 1, 16-17 (93 SC 764, 35 LE2d 67) (1973).

[18] (Punctuation omitted.) *Maretick v. Jarrett*, 62 P3d 120, 123 (II) (Ariz. 2003).

[19] See *State v. Barnhart*, 563 SE2d 820, 824-825 (II) (W.Va. 2002) (holding that presence of police officer during grand jury deliberations required dismissal of indictment); *Vaughn v. Commonwealth*, 485 SW2d 497, 498 (Ky. 1972) (finding that presence of court reporter during grand jury deliberations required dismissal of indictment).

[20] 475 U. S. 66, 86 (III) (106 SC 938, 89 LE2d 50) (1986) (Marshall, J., dissenting).

room will often be impossible to quantify, and may not be apparent from the grand jury transcript."[21]

Moreover, the district attorney and his staff are not under the oath of secrecy which binds members of the grand jury.[22] Their presence in grand jury deliberations multiplies the opportunities for the sanctity of those deliberations to be violated. As "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings,"[23] the presence of unauthorized persons not under an oath of secrecy during grand jury deliberations should be forbidden as contrary to the effective operation of the grand jury.

In *Bank of Nova Scotia v. United States*,[24] the Supreme Court required a showing of prejudice to overturn an indictment for prosecutorial misconduct in presenting the case to the grand jury. The prosecutorial misconduct included providing misinformation to the grand jury and mistreating witnesses.[25] In that case, however, the Supreme Court distinguished the misconduct from those cases "in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice."[26]

We believe that the presence of a prosecutor during grand jury deliberations compromises key elements of the grand jury, its independence from outside influence and the secrecy of its deliberations, thus rendering the proceeding fundamentally unfair. The presence of a district attorney or his staff during deliberations should be presumed prejudicial to the defendant, and an indictment obtained under these circumstance should be set aside.[27]

Nonetheless, in this case, Colon did not raise the issue of any grand jury irregularity until after he was convicted at trial by a jury. However diligent Colon may have been in seeking to discover the basis for any alleged grand jury irregularity, the trial jury's verdict "rendered harmless any conceivable error in the charging decision

---

[21] Id. (addressing violation of Federal Rule of Criminal Procedure 6 (d), which prohibits presence of anyone other than jurors for grand jury deliberation or voting); see also *Davis v. Traub*, 565 P2d 1015, 1018 (N.M. 1977) ("The record of the proceeding would not reflect the full import of the situation, i.e. the raised eyebrows, the tone of voice, the questioning glance[,] etc.").

[22] See OCGA § 15-12-67 (b) (oath of grand jurors); compare Rule 6 (e) of the Federal Rules of Criminal Procedure (providing that not only jury members but also government attorneys and those assisting them may not disclose matters occurring before the grand jury).

[23] *Douglas Oil Co. &c. v. Petrol Stops Northwest*, 441 U. S. 211, 218-219 (II) (99 SC 1667, 60 LE2d 156) (1979) (noting various reasons for grand jury secrecy, including insuring freedom in grand jury deliberations and encouraging witnesses to testify).

[24] 487 U. S. 250, 256 (108 SC 2369, 101 LE2d 228) (1988).

[25] Id. at 253 (I).

[26] Id. at 257 (II).

[27] See *State v. Revere*, 94 S2d 25, 31-34 (La. 1957).

that might have flowed from the violation."[28] Thus, the trial court did not err in denying Colon's motion for new trial on this ground.

4. Colon argues that the trial court erred by allowing witnesses to impermissibly bolster the credibility of the victims. It is true that the credibility of a witness or victim is a matter for the jury, and a witness' credibility may not be bolstered by the opinion of another witness as to whether the witness is telling the truth.[29] We find, however, that Colon failed to preserve any alleged error and that the testimony complained of would not have required a mistrial.

As a general rule, it is necessary to object at the time evidence is actually offered, or the objection is waived; moreover, an objection different from that made below may not be urged on appeal.[30] A review of the record in this case reveals that Colon failed to object to any of the testimony of which he now complains on the ground that it improperly bolstered the victims' credibility. He has thus failed to preserve this argument for appellate review.

Notwithstanding Colon's failure to preserve this issue for appeal, we have reviewed the record and find that the testimony was proper in that it did not bolster the victims' credibility. The testimony merely pointed out factual evidence which supported the contentions of the state. The testimony did not reflect the witness' personal beliefs as to the veracity of the victims and did not constitute improper bolstering.[31] In the sole instance where the state did ask a question which would have improperly bolstered the victims' testimony, Colon's attorney objected, and the trial court sustained the objection. The trial court did not err in admitting the testimony at issue.

5. Colon alleges the trial court erred in charging OCGA § 16-6-4 (c) in its entirety when the indictment only alleged that the crime of aggravated child molestation had been committed in one way. Specifically, Colon contends the indictment only charged aggravated child molestation involving an act of sodomy, not involving physical injury to the child. We find no error.

Generally, it is not error to charge an entire Code section even though only part of the section may be applicable. "However, error arises if the indictment specifies the commission of a crime by only one of several methods possible under the statute and a reasonable probability exists that the jury convicted the defendant of committing the offense in a manner not charged in the indictment."[32] No such reasonable probability exists here.

---

[28] *Mechanik,* supra at 73.

[29] See *Branesky v. State,* 262 Ga. App. 33, 36 (3) (a) (584 SE2d 669) (2003).

[30] See *Rogers v. State,* 247 Ga. App. 219, 226 (9) (543 SE2d 81) (2000).

[31] See *Usher v. State,* 258 Ga. App. 459, 463 (1) (e) (574 SE2d 580) (2002).

[32] (Punctuation omitted.) *Hall v. State,* 254 Ga. App. 131, 133 (2) (561 SE2d 464) (2002).

The trial court read the entire indictment and charged the jury regarding the presumption of innocence and the state's burden to prove guilt beyond a reasonable doubt. The trial court further informed the jury that it needed to decide the case "count by count, charge by charge, making your finding as to such charge as you agreed on one way or the other, guilty or not guilty." "As to any count or charge that Mr. Colon is convicted on, he can only be convicted by a unanimous verdict of 12 voting alike in the jury and only upon the state have [sic] carried the burden of proof of guilt beyond a reasonable doubt." Subsequently, the trial court informed the jurors that they would have the indictment with them to consult, "to read as to what the charges are and to whom they refer by way of alleged victims." These jury instructions, read as a whole, properly set forth the basis on which the jury was authorized to find Colon guilty of aggravated child molestation and would not have confused a jury of average intelligence.[33]

6. Colon maintains error in the state's failure to reveal a deal or agreement not to prosecute which the state allegedly gave to a witness in return for trial testimony. However, the record does not support Colon's position. Despite Colon's arguments to the contrary, the prosecutor, investigator and witness all testified that no deal was ever made with the witness. This enumeration of error lacks merit.

7. Prior to trial and while Colon was in custody, the state applied for a search warrant to obtain a blood sample from Colon. The request was based on an allegation that Colon had sex with two of the victims on the same date and had used condoms. After used condoms were retrieved from the area described by the victims, the state sought a search warrant to obtain a blood sample to be used to compare Colon's DNA to a DNA sample found in the recovered condoms. The search warrant was signed and blood was drawn from Colon. Subsequently, Colon moved to suppress the blood evidence and any expert testimony derived from obtaining the blood sample. The trial court denied the motion to suppress.

Colon maintains the trial court erred in denying his motion to suppress because (a) the state failed to introduce a copy of the search warrant at the motion to suppress hearing, and (b) the affidavit on which the warrant was based was insufficient as a matter of law because it did not contain a time or date of the incident giving rise to the request. Both of these grounds lack merit.

(a) When a motion to suppress is made challenging the validity of a search and seizure with a warrant, the burden of showing that the search and seizure were lawful is on the state. This burden is satisfied

---

[33] See *James v. State*, 268 Ga. App. 851, 852-853 (1) (602 SE2d 854) (2004); *Hall*, supra.

"by production of the warrant and its supporting affidavit, and by showing either by those documents or by other evidence that the warrant is not subject to the statutory challenge alleged."[34] Colon argues that the trial court erred in denying his motion to dismiss because the state never introduced a copy of the search warrant at the motion to suppress hearing. We disagree.

"In those situations where the record brought to this court did not contain a search warrant or the affidavit, we have examined the transcript to determine if the State presented sufficient testimony at the hearing before the issuing magistrate."[35] Here, Colon moved to suppress "any information of a DNA nature because of an inadequate search warrant affidavit for procurement of the search warrant." Colon did not challenge the actual existence of the search warrant.[36] A copy of the affidavit supporting the search warrant was attached as an exhibit to Colon's amended motion to suppress and was introduced by Colon at the motion to suppress hearing. And, the detective who requested the search warrant testified at the hearing. Because Colon did not have to expend any additional effort and was not deprived of any opportunity to confront and cross-examine witnesses,[37] and because the transcript shows that sufficient evidence was presented to carry the state's burden of proving that facts constituting probable cause were presented to the judge issuing the search warrant,[38] we do not find that the state's failure to introduce the actual search warrant requires reversal in this case.

(b) Colon contends the affidavit supporting the search warrant was insufficient because it did not include any statement as to the date on which the alleged acts of sexual intercourse in question occurred. According to Colon, the failure to include a description of the date was fatal because it meant the issuing magistrate had no evidence from which he could decide whether the information was stale. However, the search warrant in this case is not subject to a staleness objection.

In assessing staleness as it relates to probable cause, we review the totality of the circumstances to determine whether there was a reasonable probability that the conditions referred to in the sworn testimony would continue to exist at the time of the issuance of the search warrant.[39] Here, the subject of the search warrant was Colon's

---

[34] (Punctuation omitted.) *Bowman v. State*, 205 Ga. App. 347, 348 (422 SE2d 239) (1992).

[35] *State v. Mincey*, 167 Ga. App. 850, 850-851 (2) (308 SE2d 18) (1983).

[36] Compare *Baez v. State*, 206 Ga. App. 522, 526-528 (1) (425 SE2d 885) (1992).

[37] See *Bowman*, supra.

[38] See *Grant v. State*, 198 Ga. App. 732, 734 (2) (403 SE2d 58) (1991).

[39] See *Tarvin v. State*, 277 Ga. 509, 511 (4) (591 SE2d 777) (2004).

blood. The conditions outlined in the affidavit for the search warrant were not going to change. The state was seeking a sample of Colon's DNA to compare with a collected sample of DNA. Staleness was not an issue, and the trial court did not err in denying Colon's motion to suppress on this ground.

8. Colon contends the trial court erred in permitting the state to introduce testimony that Colon refused to cooperate when the state attempted to procure his blood sample pursuant to the search warrant. However, Colon did not object to the testimony at trial and thus has failed to preserve this alleged error for appellate review.[40]

9. Colon maintains the trial court erred in denying his motion for new trial on the ground that his trial counsel was ineffective because he asked a detective on cross-examination if he believed the victims' statements. The record shows that defense counsel was attempting to show the victims' lack of credibility and asked the detective if his opinion would change "if it was shown as absolute fact" that the victims had lied about Colon buying them wine and wine coolers at a specific gas station. The detective responded: "Perhaps the girls were confused on the location, but I do believe the statements of the girls." Defense counsel then asked, "You believe the statement of the girls even over the BP station owners?" And the detective answered, "Yes, sir. I've spoken with the girls. I do believe them." We do not find that defense counsel's cross-examination resulted in ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, Colon must prove that counsel was deficient and that, but for the deficiency, there was a reasonable probability that the outcome would have been different.[41] When ruling on a claim of ineffective assistance, this Court does not evaluate counsel's trial tactics and strategic decisions in hindsight.[42] The decision of how to conduct cross-examinations is a matter of trial strategy and tactical decisions and is the exclusive province of the lawyer after consultation with the client.[43] Here, the record shows that defense counsel's cross-examination attempted to demonstrate inconsistencies in the victims' testimony and, thereby, was a result of trial strategy.[44] The trial court did not err in concluding that Colon received effective assistance of counsel.

10. Colon contends the prosecutor in his closing argument violated the "golden rule" by improperly placing the jurors in the shoes of the victims. However, the record shows that Colon failed to object

---

[40] See *Willingham v. State*, 235 Ga. App. 475, 475-476 (1) (509 SE2d 744) (1998).

[41] See *Fielding v. State*, 278 Ga. 309, 311 (3) (602 SE2d 597) (2004).

[42] Id.

[43] See *Rice v. State*, 243 Ga. App. 143, 147 (3) (531 SE2d 182) (2000).

[44] See *Rubi v. State*, 258 Ga. App. 815, 820-821 (5) (575 SE2d 719) (2002).

during the trial. He has thus failed to preserve his right to urge the impropriety of this argument on appeal.[45]

11. Colon maintains the trial court erred by not considering him for first offender treatment during the sentencing phase of the trial. However, Colon points to no evidence in the record, and we can locate none in the record, showing that he requested first offender status. The law is clear that the trial court has no obligation to consider first offender treatment absent a request from the defendant.[46]

Here, there is no indication that the trial court had an inflexible policy of never granting first offender treatment or that the court failed to exercise its discretion in that regard. The record simply shows that [Colon] never requested first offender treatment, so the matter was never brought to the court's attention.[47]

There is no evidence in this case that the trial court improperly failed to exercise its discretion with regard to sentencing Colon as a first offender.

12. In his final enumeration of error, Colon contends the trial court erred by denying his original motion for new trial and the first four amendments to his motion for new trial because the trial court did not have a full and fair hearing on each of the grounds raised by him, thus denying him effective assistance of counsel. We find no error.

The record shows that Colon was convicted of the charges at issue in 1996. On June 3, 1996, trial counsel filed a motion for new trial. Four subsequent amendments were filed on August 17, 2001, August 20, 2001, August 28, 2001, and August 30, 2001. A hearing on the motion for new trial was held on October 19, 2001, and the court denied the motion on November 3, 2003.

Colon filed a fifth amendment on October 29, 2003. He subsequently amended his fifth amendment and filed a sixth amendment on November 14, 2003, the last day of the hearing on his amended motion for new trial. Hearings on the fifth and sixth amendments were held on November 3, 5, 12 and 14, 2003. On December 2, 2003, the court denied Colon's fifth and sixth amendments to the motion for

---

[45] See *Watson v. State*, 278 Ga. 763, 775 (17) (604 SE2d 804) (2004); *Mullins v. State*, 270 Ga. 450, 450-451 (2) (511 SE2d 165) (1999).

[46] See *Powell v. State*, 271 Ga. App. 550, 552 (610 SE2d 178) (2005); *Green v. State*, 265 Ga. App. 126, 127 (1) (592 SE2d 901) (2004).

[47] (Punctuation omitted.) *Green*, supra at 128.

new trial. The court also denied a March 26, 2004 motion for reconsideration and a September 8, 2004 extraordinary motion for new trial.

Despite Colon's assertion that he did not have a full and fair hearing on his motion for new trial and amendments 1-4 of the motion for new trial, his half-page argument does not provide any record citations showing that his attorney at the time of the October 19, 2001 motion for new trial hearing was not allowed to present any of the new trial arguments filed prior to that hearing. The only citation provided by Colon is to a transcript where his most recent attorney expressed his belief that he was not permitted to argue anything from the original motion for new trial or amendments 1-4 of the original motion for new trial. Colon's attorney urged error in this ruling because he wanted to make the initial arguments and "expand on what the appellate counsel before me had done."

We first note that the burden is always on the defendant asserting error to show it affirmatively by the record.[48] The defendant's appellate brief cannot serve in place of the record or the transcript for the purpose of demonstrating error or for supporting a claim of error.[49] Here, Colon has failed to cite to any ruling of the trial court supporting his contention, and we can find no evidence in the record supporting his contention.[50] He has likewise failed to provide any evidence showing that the trial court failed to conduct a full and fair hearing on the alleged errors raised by Colon in his initial motion for new trial and the first four amendments to his motion for new trial. In fact, the state notes in its brief that "[m]ore time was expended hearing the new trial motions than in the actual trial."

Moreover, all the arguments raised in Colon's initial motion for new trial and amendments 1-3, and some of the arguments from amendment 4 of that motion for new trial, were raised and presented before this Court, and we found that all of the arguments lacked merit. Thus, even assuming the trial court did deny Colon a full and fair hearing on his asserted grounds of error, Colon cannot show he was harmed by the trial court's actions. This enumeration of error is without merit.

*Judgment affirmed. Barnes, J., concurs. Johnson, P. J., concurs specially.*

---

[48] See *State v. O'Quinn*, 192 Ga. App. 359, 360 (1) (384 SE2d 888) (1989).
[49] Id.
[50] See *White v. State*, 257 Ga. App. 861, 863-864 (3) (572 SE2d 692) (2002).

JOHNSON, Presiding Judge, concurring specially.

Although I agree with the result reached by the majority, I am unable to fully endorse all that is said in Division 3. I agree wholeheartedly that it violates state law for a district attorney or members of his staff to remain in the presence of the grand jury while the grand jury is deliberating, voting or deciding any other action concerning an indictment. However, I decline to adopt the majority's position that the *mere presence* of an unauthorized person before the grand jury, without a showing of prejudice, is a sufficient ground to set aside an indictment. Rather than the harmful as a matter of law analysis espoused by the majority, I would adopt the rule that a defendant must show that the presence of a district attorney or a staff member during grand jury deliberations and voting prejudiced the grand jury before an indictment is set aside.

While Colon does not cite any Georgia case law which specifically addresses the presence of a prosecutor during grand jury deliberations and voting, and we can locate no Georgia case law specifically addressing this issue, Georgia cases and United States Supreme Court cases hold that a defendant must show prejudice when raising an issue regarding other grand jury irregularities. In *Bank of Nova Scotia v. United States*,[51] the Supreme Court held that "dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." Likewise, in *Mach v. State*,[52] this Court refused to reverse a conviction on the ground of irregularity in the grand jury proceeding because the defendant had failed to show any prejudice resulting from the irregularity.

While all unauthorized persons must vacate the grand jury room while the grand jury is deliberating and voting, we note that the grand jury's determination is a preliminary one, and the defendant enjoys the full panoply of constitutional protections at trial. Here, even assuming that a member of the district attorney's staff improperly remained in the room while the grand jury deliberated and voted on whether to indict Colon, Colon has failed to show how this irregularity prejudiced the grand jury. Colon's failure to show any infringement on the ability of the grand jury to exercise its independent judgment in the charging decision necessitates a denial of his motion to dismiss.[53]

---

[51] (Citation and punctuation omitted.) 487 U. S. 250, 256 (II) (108 SC 2369, 101 LE2d 228) (1988).

[52] 109 Ga. App. 154, 158 (1) (b) (135 SE2d 467) (1964), superseded by statute on other grounds, *State v. Cook*, 172 Ga. App. 433, 437-439 (2)-(4) (323 SE2d 634) (1984).

[53] See *United States v. Wingo*, 723 FSupp. 798, 803 (N.D. Ga. 1989).

Moreover, regardless of the analysis espoused by the majority or my special concurrence in this case, it is undisputed that Colon has already been convicted by a jury. Therefore, as noted by the majority, any irregularity in the grand jury proceedings has been rendered moot.[54] Accordingly, I concur with the ultimate result.

DECIDED AUGUST 11, 2005 — ▮

*W. Keith Barber*, for appellant.
*Richard A. Mallard, District Attorney, Keith A. McIntyre, Assistant District Attorney*, for appellee.

---

[54] *United States v. Mechanik*, 475 U. S. 66, 71 (106 SC 938, 89 LE2d 50) (1986); *Isaacs v. State*, 259 Ga. 717, 720 (2) (b) (386 SE2d 316) (1989).